## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAMAR BROWN, | : | CIVIL ACTION NO. 3:CV-10-0149 |
| | : | |
| Plaintiff | : | (Judge Nealon) |
| | : | |
| v. | : | |
| | : | **FILED** |
| ROBERT SHANNON, et al., | : | **SCRANTON** |
| | : | |
| Defendants | : | MAR 0 8 2013 |

MEMORANDUM    PER _____
DEPUTY CLERK

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Lamar Brown, an inmate currently confined in the State Correctional Institution, Albion, Pennsylvania, filed the above captioned civil rights action pursuant to 42 U.S.C. § 1983. Brown alleges that on January 29, 2008, while confined in the State Correctional Institution, Frackville ("SCI-Frackville"), Pennsylvania, corrections staff assaulted him while he was being escorted from his cell, falsely accused him of refusing to obey an order, and denied him due process during the resulting prison disciplinary proceeding. (Doc. 1, complaint). Plaintiff names the following SCI-Frackville employees as Defendants: Superintendent Shannon; Deputy Superintendents Wenerowicz, Kovalchik, and Kephart; Hearing Examiner Luquis; Unit Managers Miranda and Rosato; Grievance Coordinator Damiter; and Correctional Officers Dusel, Popson, Mirarchi, Alshefski, Albert, Corby, and Sabo. Id.

By Memorandum and Order dated March 4, 2011, Defendants' motion to dismiss was granted in part. (Doc. 32, Memorandum and Order). Plaintiff's Due Process, Equal Protection, conspiracy, and state law claims were dismissed. Id. As a result, Defendants Miranda, Rosato, Wenerowicz, Kephart, Kovalchik, Damiter, Shannon, and Luquis were dismissed from the action.

Id. The only remaining claim is Plaintiff's Eighth Amendment claim of excessive force. Id. Remaining Defendants Dusel, Popson, Mirachi, Alshefski, Albert, Corby, and Sabo were directed to file an answer to the complaint. Id.

Presently pending before the Court is the remaining Corrections Defendants' motion for summary judgment. (Doc. 67). Defendants seek summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies with respect to his excessive force claim. The parties have fully briefed the issue and the motion is now ripe for disposition. For the reasons that follow, the Court will grant Defendants' motion for summary judgment.

## I.      Summary Judgment

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

II.      **Statement of Facts**

On January 29, 2008, Plaintiff was served with the following two misconduct reports:

(1)      **Misconduct Report No. 816667**

3

This misconduct charged Plaintiff with "Refusing to Obey an Order." (Doc. 19, amended complaint, Ex. D, Misconduct Report). The incident report, which was written by Officer Houser, indicates that at approximately 8:30 am, the following conduct occurred:

> On above date and approx time while conducting a security round on the RHU Annex, this officer observed BC-43 cell door covered with a towel. This officer ordered inmate Brown, Lamar (FR-2835) to remove the towel numerous times. Inmate Brown refused all orders. This officer then exited the tier and contacted main control, Capt. Dusel.
>
> *Note Inmate Brown currently on DC thru 7/08/08.

Id.

On February 5, 2008, Brown's hearing before Hearing Examiner Sharon Luquis was held in absentia. (Doc. 19, amended complaint, Ex. F, Disciplinary Hearing Report). Hearing Examiner Luquis found the following:

> Mr. Brown's misconduct hearing regarding misconduct report #A816667 was held today 2/5/08. HEX informed by Sgt. Reichert (SCI-Frackville's RHU Sergeant) that due to the Mr. Brown's previous outburst which led to him having to be restrained by custody staff, he was placed in a suicide smock and has restricted movement status. Hearing was continued without Mr. Brown's presence due to staff safety concerns. HEX finds COII Houser's written report more credible than Mr. Brown's failure to attend the is hearing and contest that he observed Mr. Brown's cell door covered with a towel and that Mr. Brown was ordered by him to remove the towel numerous times, however, Mr. Brown refused to comply with his orders, thus supporting charge #35. A preponderance of evidence exists to support charge #35. HEX finds Mr. Brown guilty of charge #35.

(Doc. 19, amended complaint, Ex. G, Disciplinary Hearing Report). The Hearing Examiner sanctioned Brown to sixty (60) days in disciplinary custody in the Restricted Housing Unit (RHU), consecutive to the time he was already serving in the RHU, or from July 9, 2008 through August 7, 2008. Id.

On February 15, 2008, Brown appealed[1] the Hearing Examiner's decision to the Program

Review Committee, which sustained the findings, based on the following:

> Inmate contends in his appeal that he was wrongfully found guilty and was not given the opportunity to plead guilty or not guilty because the Hearing Examiner rendered her decision IN ABSENTIA of his presence. Inmate did not refuse to be present.

> Upon review of the report of misconduct, the record of the hearing, the appeal, and all relevant information, PRC finds that the sanction imposed is within the range of misconduct sanctions outlined under the Directive and is not viewed by the PRC to be disproportionate to the offense.

> PRC finds no errors in relevant procedures, finds sufficient evidence to support the decision, and finds that the sanction is in compliance with DC-ADM 801.

> PRC sustains the Hearing Examiner's Decision.

(Doc. 19, amended complaint, Ex. I, Program Review Committee Misconduct Appeal).

Plaintiff's subsequent appeal to Superintendent Shannon was denied as untimely filed, based on

the following rationale:

> It is noted that your initial appeal regarding your February 5, 2008 Hearing was not received by PRC until March 6, 2008 – well past the 15-day deadline. PRC denied that appeal on March 10. You then had 7 days to file a second level appeal and you again failed to meet that deadline. Your appeal was not received until March 25, 2008. Your appeal is denied as untimely.

---

[1]The Department provides an administrative procedure establishing a disciplinary process that provides clear notice of prohibited behavior, outlines a fundamentally fair hearing process, and sets forth consistent sanctions for violations of Department rules and regulations in the Department's Administrative Directive 801 ("DC-ADM 801"). The Department's Administrative Directives are available at http://www.cor.state.pa.us. See also (Doc. 70. Ex. B-1, DC-ADM 801).

The DC-ADM 801 also provides a process for resolution of alleged inmate violations. Id. The initial misconduct is heard by a Hearing Examiner, if the violation is determined to require formal resolution, an appeal from the Hearing Examiner's decision can be made to the Program Review Committee ("PRC") within 15 days of the hearing; an appeal from the PRC decision to the Superintendent, within seven days of the PRC decision; and the final appeal to the Chief Hearing Examiner, i.e., Final Review, within seven days of the decision of the Superintendent. Id.

(Doc. 19, amended complaint, Ex. K, Superintendent's Response). Although Brown states that

he filed an appeal to the Chief Hearing Examiner, he does "not know if he received it or if it even

left the prison, because [he] did not get a response." (Doc. 1, complaint at ¶ 8).

### (2) Misconduct Report No. 820626,

This misconduct charged Plaintiff with "Refusing to Obey an Order." (Doc. 19,

amended complaint, Ex. E, Misconduct Report). The incident report, which was written at

approximately 2:25 pm, on January 29, 2008, by Officer Alshefski states the following:

> On the above date and approximate time while this officer was escorting
> inmate Brown (FR2835) to the RHU, Inmate Brown became aggressive and
> attempted to pull away from this officer. Inmate Brown was given several
> orders to stop resisting. Brown refused all orders and continued to resist.
> Brown was restrained to the floor. Brown was then escorted to medical and
> seen by medical. Brown was then escorted to EB23 cell without further
> incident.

Id.

Hearing Examiner Luquis found the following with respect to Misconduct Report No.

A820626:

> Mr. Brown's misconduct hearing regarding misconduct report #A820626 was
> held today 2/5/08. HEX informed by Sgt. Reichert (SCI-Frackville's RHU
> Sergeant) that due to the Mr. Brown's previous outburst which led to him
> having to be physically restrained by custody staff, he was placed in a suicide
> smock and has restricted movement status. Hearing was continued without Mr.
> Brown's presence due to staff safety concerns. HEX finds COI Alshefski's
> written report more credible than Mr. Brown's failure to attend this hearing and
> contest that while he was escorting Mr. Brown to the RHU, Mr. Brown became
> aggressive and attempted to pull away from him. COI Alshefski further states
> that Mr. Brown was given several orders to stop resisting, however, he refused
> all orders and continued to resist, thus supporting charge #35. A
> preponderance of evidence exists to support charge #35. HEX reviewed RHU
> videotape on 2/5/08 as per Mr. Brown's written request. HEX finds Mr.
> Brown guilty of charge #35.

(Doc. 19, amended complaint, Ex. G, Disciplinary Hearing Report). The Hearing Examiner

sanctioned Brown to sixty (60) days in disciplinary custody in the RHU, consecutive to the time

imposed on Misconduct No. A816667, or from August 8, 2008 through October 6, 2008. Id.

On February 15, 2008, Brown appealed the Hearing Examiner's decision to the Program

Review Committee, which sustained the findings on March 25, 2008, based on the following:

> The PRC reviewed the misconduct in question, the actions of the Hearing
> Examiner and inmate Brown's appeal.
>
> The Program Review Committee notes that this appeal was not filed in a timely
> manner.
>
> Appeal is rejected per DC-ADM 801 which states in paragraph L.1.a "an
> inmate who has been found guilty of a misconduct charge may appeal to the
> PRC for initial review within 15 calendar days of the hearing." Your hearing
> was held on February 5, 2008.
>
> Therefore, Misconduct #A820626 is sustained.

(Doc. 19, amended complaint, Ex. N, Program Review Committee Misconduct Appeal). Plaintiff

states that he subsequently filed appeals to Superintendent Shannon and the Chief Hearing

Examiner, but does not know if these parties received his appeals, because he "did not get a

response." (Doc. 1, complaint at ¶ 10).

The Department's administrative directive entitled "Inmate Grievance System,"

DC-ADM 804 ("804"), provides a multi-step administrative grievance appeal process that was

established to ensure that inmates have an avenue through which to resolve issues relating to their

incarceration. See (Doc. 70, Ex. C-1, DC-ADM 804).

After informal attempts to resolve the problem with staff, an inmate may submit a

written grievance to the prison grievance coordinator for initial review. Id. The grievance must

be submitted within fifteen "working days" of the incident at issue. Id. All grievances, whether timely or not, are assigned a tracking number, which is stamped on the front of the form, and the inmate is provided with a copy of the stamped grievance. Id. The grievance coordinator will render a decision within a short time. If relief is denied, the inmate may appeal the decision to the superintendent of the institution. Upon completion of the initial review, and the appeal to the superintendent, an inmate may seek final review with the Secretary's Office of Inmate Grievances and Appeals. Id.

Although Defendants submit that a review of Brown's grievance history revealed only two grievances filed by Brown at SCI-Frackville, one filed in March, 2008, and the other, in April, 2008, both which concerned inmate property, (Doc. 70, Ex. C, Declaration of Keri Moor, Grievance Review Officer), Brown asserts that he filed a formal grievance on February 1, 2008, with Defendant Peter Damiter, Grievance Coordinator, complaining that he was subjected to excessive force on January 29, 2008, when extracted from his cell. (Doc. 19, amended complaint, Ex. A, Official Inmate Grievance). Plaintiff states that Defendant Damiter did not respond to his grievance about the excessive force claim. (Doc. 1, complaint at ¶ 10).

On February 11, 2008, Plaintiff alleged that he filed an appeal to Defendant Superintendent Shannon, raising his claims of excessive force and complaining that Defendant Damiter failed to respond to Plaintiff's initial grievance. (Doc. 19, amended complaint, Ex. B, Official Inmate Grievance).

After having received no response from Defendant Shannon, on February 21, 2010, Plaintiff filed an appeal to the Central Office of Misconduct and Grievance Appeals. (Doc. 19, amended complaint, Ex. C, Official Inmate Grievance). Plaintiff gives no indication as to the

8

outcome of this appeal and simply states that he "doubts that the letter containing the grievance made it to the Central Office in Camp Hill Prison." (Doc. 1, complaint at ¶ 14).

## III.    Discussion

The Prison Litigation Reform Act ("PLRA") requires prisoners to present their claims through an administrative grievance process before seeking redress in federal court. The act specifically provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Under the PLRA, a prisoner must exhaust all available administrative remedies before raising claims under § 1983 concerning prison conditions. See id. This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). "[I]t is beyond the power ... of any ... [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894–95 (S.D.N.Y. 1998) (citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis, 204 F.3d at 71.

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 92 (2006). See also Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir.2006) (quoting Johnson v. Jones, 340 F.3d 624,

627 (8th Cir. 2003) ("[T]he district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred.")).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ...." Id. at 90–91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 93 (quoting Porter, 534 U.S. at 525). Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill, 372 F.3d at 227–32 ("[P]rison grievance procedures supply the yardstick for measuring procedural default."). A procedural default, "either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." Gallego v. United States, 2005 WL 1653166, *2 (M.D. Pa. 2005).

Brown's unsupported allegations of a timely submitted grievance cannot save his Eighth Amendment claim. The grievance form introduced by Brown carries a date of February 1, 2008, but no other indication of filing. It does not include a tracking number, and prison authorities have no record of its filing. Brown produces no evidence that the guards mishandled or destroyed the grievance or subsequent appeals. All competent evidence of record demonstrates that Brown failed to properly exhaust administrative remedies.

To the extent that Brown argues that he was "not required to nor permitted to file an institutional grievance regarding the incident on January 29, 2008" and that his "avenue for administrative remedies was through DC-ADM 801", see (Doc. 107, brief in opposition at 2-3), his argument likewise fails.

Initially, the Court notes that both Misconduct A816667 and Misconduct A820626 were clearly untimely under the prison grievance system. They, accordingly, were denied without review of the merits at the final level of review. These late filings establish procedural default and a lack of proper exhaustion for purposes of 42 U.S.C. § 1997e(a). However, even if properly filed, Plaintiff himself, stated in his misconduct appeals that he was "simply arguing that law and department directives were violated by giving [him] time in disciplinary custody without a hearing." See (Doc. 107, Exs. G, J, Misconduct Hearing Appeals). Plaintiff, in no way, raises his Eighth Amendment excessive force claim in his misconduct appeals. As such, Plaintiff's misconduct appeals, if timely filed, would still fail to satisfy "proper" exhaustion. See Germosen v. Reno, 2000 U.S. Dist. LEXIS 23146, *16–17 (M.D. Pa. 2000) (Vanaskie, J.) (holding that the filing of "grievances concerning the facts relating to the instant complaint" is not sufficient to satisfy the exhaustion requirement; rather, a prisoner must exhaust administrative remedies on each claim raised in his complaint); Ramirez v. Martinez, 2009 U.S. Dist. LEXIS 72056, *9 (M.D. Pa. 2009) (Mannion, M.J.) (stating that "each claim" must be exhausted at every level of review), adopted by 2009 U.S. Dist. LEXIS 72226 (M.D. Pa. 2009) (Jones, J.). Thus, the record before the court as to Brown's exhaustion efforts as to the sole surviving claim, excessive force, is clear. Plaintiff failed to properly exhaust his administrative remedies before filing this action, and thus the Defendants are entitled to summary judgment. Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (nonprecedential).

A separate Order will be issued.

Dated: March 8, 2013

United States District Judge

11